UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHRISTOPHER MICHAEL VANACOR | * | CIVIL ACTION |
| VERSUS | * | NO. 22-1325 |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION | * * | SECTION "H" (2) |

## REPORT AND RECOMMENDATION

Pursuant to § 405(g) of the Social Security Act ("the Act"), Plaintiff Christopher Michael Vanacor seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for disability insurance benefits ("DIB") under Title II of the Act.[1]  Pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B), this matter was referred to the undersigned United States Magistrate Judge for submission of Findings and Recommendations.

## I.    PROCEDURAL HISTORY

Plaintiff Christopher Michael Vanacor is now a 35-year-old man who filed an application for DIB alleging disability commencing on January 25, 2019.  ECF No. 6-5 at 1-2.  Vanacor previously applied for DIB alleging disability commencing on April 1, 2017, which application was denied  by the Commissioner and affirmed by Administrative Law Judge Michael Hertzig on January 24, 2019.  ECF No. 6-3 at 26-37. Vanacor's  relevant work history includes employment as an armorer, groundskeeper, cleaner, car salesman, stocker, and deckhand.  ECF No. 6-6 at 8, 18-28, 75-82.  His age classification is that of a "younger person."  20 C.F.R. § 404.1563(c).  He alleges disability due to major depressive disorder, chronic PTSD, general anxiety disorder,

---

[1] 42 U.S.C. §§ 405(g).

1

persistent depressive disorder with anxious distress, insomnia, obstructive sleep apnea, panic attacks, tinnitus, headaches, opioid use disorder, neuropathy, and MRSA. ECF No. 6-6 at 7.

Vanacor applied for DIB on October 9, 2020. ECF No. 6-5 at 2-5. His application was denied at the agency level on December 15, 2020. ECF No. 6-3 at 11. He requested reconsideration on February 11, 2021 (ECF No. 6-4 at 22), and his claims were denied on reconsideration on May 19, 2021. ECF No. 6-3 at 22. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") (ECF No. 6-4 at 28) and the matter was heard on December 1, 2021 before ALJ Karen Wiedemann. ECF No. 6-2 at 34-75. Vanacor appeared and testified at the hearing and was represented by counsel, Wiebke Breuer. ECF No. 6-2 at 34. Mary Downing, an impartial vocational expert, also appeared and testified at the hearing. *Id*.

On January 10, 2022, ALJ Wiedemann issued a decision denying Vanacor's application for DIB. ECF No. 6-2 at 8-27. After the Appeals Council denied review on March 10, 2022, the ALJ's decision became the final decision of the Commissioner for purposes of this Court's review. ECF No. 6-2 at 2. Vanacor filed this action on May 12, 2022. ECF No. 1. In accordance with this Court's Scheduling Order, Vanacor filed a motion for summary judgment on October 7, 2022 and the Commissioner filed a cross-motion for summary judgment on November 3, 2022. ECF Nos. 9, 10, 11.

## II.    STATEMENT OF ISSUES ON APPEAL

Vanacor identifies three issues for appeal:

1. Plaintiff's Drug Addiction and Alcoholism (DAA) was primarily in remission throughout the relevant period, rendering a DAA materiality analysis inappropriate.

2. Plaintiff's impairments of posttraumatic stress disorder (PTSD) and depression are unrelated to and not exacerbated by his addiction; thus his drug addiction is not material to his disability and the ALJ finding of materiality constitutes legal error.

3. The ALJ's finding of Plaintiff's limitations are not based on substantial evidence, requiring remand.

## III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

1. The claimant has not engaged in substantial gainful activity since January 25, 2019, the alleged onset date (20 CFR 404.1520(b), 404,1571 *et seq.*)

2. The claimant has the following severe impairments: sleep apnea, degenerative disc disease of the cervical spine, Major Depressive Disorder, Posttraumatic Stress Disorder (PTSD), Generalized Anxiety Disorder, and polysubstance abuse (20 CFR 404.1420(c)).

3. Even with the claimant's substance abuse, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

4. After careful consideration of the entire record, the undersigned finds that based on all of the impairments, including the claimant's substance abuse, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he is frequently able to handle with the bilateral hands.  The claimant can sustain attention for up to 2-hour blocks of time when performing simple and routine work-related tasks, follow simple work-like procedures, and make simple work-related decisions.  He would not require inordinate supervision when performing simple and routine tasks.  He would have significant difficulty dealing effectively with the demands of the general public and could work in proximity to the general public, but his job should never require direct interaction. He is capable of occasional coworker and supervisor contact.  The claimant would function best in standardized work environments with minimal variation.  He could make adjustments and avoid hazards in a work environment with minimal variation.  The claimant would be off task 20% of the time.

5. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

6. The claimant is a younger individual age 18-49 (20 CFR 404.1563).

7. The claimant has at least a high school education (20 CFR 404.1564).

8. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568).

9. Considering the claimant's age, education, work experience, and residual functional capacity based on all the impairments, including the substance use disorder, there were no

jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

10. If the claimant stopped the substance abuse, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would have a severe impairment or combination of impairments (20 CFR 404.1522).

11. If the claimant stopped the substance abuse, the claimant would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).

12. After careful consideration of the entire record, the undersigned finds that, if the claimant stopped the substance abuse, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he is frequently able to handle with the bilateral hands.  The claimant can sustain attention for up to 2-hour blocks of time when performing simple and routine work-related tasks, follow simple work-like procedures, and make simple work-related decisions.  His symptoms would not prevent sustaining the mental demands associated with performance of simple, routine tasks throughout a workday and workweek.  He would not require inordinate supervision when performing simple and routine tasks.  He would have significant difficulty dealing effectively with the demands of the general public and could work in proximity to the general public, but his job should not require direct interaction.  He is capable of occasional coworker and supervisor contact. The claimant would function best in standardized work environments with minimal variation.  He could make adjustments and avoid hazards in a work environment with minimal variation.

13. The claimant is still unable to perform past relevant work (20 CFR 404.1565).

14. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

15. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 404.1560(c) and 404.1566).

16. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g) and 404.1535).  Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the

meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

## IV.   <u>ANALYSIS</u>

### A.  <u>Standard of Review</u>

The role of this Court on judicial review under 42 U.S.C. § 405(g) is to determine whether the decision is supported by substantial evidence on the record as a whole and whether the proper legal standards are applied in evaluating the evidence.[2]  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it is more than a scintilla but less than a preponderance.[3]  A finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision.[4]  The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the court does not try any issues *de novo*.[5] This standard precludes the court from reweighing the evidence or substituting its judgment for that of the administrative fact finder.[6]

The court must affirm the Commissioner's determination to deny benefits unless it finds that the ALJ applied the incorrect legal standard or that the ALJ's determination is not supported by substantial evidence.[7]  The court weighs four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions

---

[2] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *Richard ex rel Z.N.F. v. Astrue*, 480 F. App'x 773, 776 (5th Cir. 2012) (citation omitted); *Stringer v. Astrue*, 465 F. App'x 361, 363 (5th Cir. 2012) (citing *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)).

[3] *Richardson v. Perales*, 402 U.S. 389, 401 (5th Cir. 1971) (citation omitted); *Richard ex rel Z.N.F.*, 480 F. App'x at 776 (citing *Perez*, 415 F.3d at 461).

[4] *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citations omitted).

[5] *Halterman ex rel Halterman v. Colvin,* 544 F. App'x 358, 360 (5th Cir. 2013) (citing *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

[6] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)); *see also Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).

[7] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[8]

To be considered disabled and eligible for benefits,[9] a claimant must show that he is unable to perform substantial gainful activity because of a medically determinable physical or mental impairment.[10] A "physical or mental impairment" is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[11] To qualify as a disability, the impairment must be expected to result in death or have lasted or can be expected to last for a continuous period of not less than twelve months.[12] The mere presence of an impairment, however, is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."[13] Thus, to be considered disabled and eligible for benefits, the Claimant must prove his disability by establishing a physical or mental impairment lasting at least twelve months that prevents him from engaging in substantial gainful activity.[14]

The Commissioner has promulgated regulations that provide procedures for evaluating disability claims.[15] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1

---

[8] *Chrisner v. Astrue*, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)); *accord Perez*, 415 F.3d at 462 (citation omitted).

[9] The relevant law and regulations governing claims for DIB and SSI are identical. *Carmon v. Barnhart*, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

[10] *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).

[11] 42 U.S.C. § 423(d)(3).

[12] *Id.* § 423(d)(1); *see also Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted).

[13] *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)) (internal quotations and emphasis omitted).

[14] 42 U.S.C. § 1382c(a)(3)(A); *see also* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).

[15] 20 C.F.R. §§ 404.1501–1599 & Appendices, §§ 416.901–998.

of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."[16]  The claimant has the burden of proof under the first four steps; if the claimant successfully carries this burden, the burden shifts to the Commissioner at the fifth step to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.[17]  When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant."[18]

**B.  Factual Background**

Plaintiff testified that he was 34-years old (now 35) with a 12th grade education.  ECF No. 6-2 at 42.  He served in the Marine Corps in 2007 and the Army from 2008 to 2014.  ECF No. 6-2 at 43.  His military service includes work as an armorer, and his subsequent work history includes employment as a deckhand, car salesman, and stocker.  ECF No. 6-2 at 45-46; *see also* ECF No. 6-6 at 8, 18-28, 75-82.  He has not been able to work since 2019.  ECF No. 6-2 at 47.

Vanacor indicated that the conditions preventing him from working include panic attacks, heart palpitations, extreme paranoia, and disassociation.  ECF No. 6-2 at 47.  He must constantly challenge "basically everything that pops into [his] head" on a daily basis because the thoughts that enter his mind are "not real and they're realistic."  ECF No. 6-2 at 48.  Vanacor noted some improvement in his panic attacks since PTSD treatment through the use of coping mechanisms and daily use of a beta blocker medication, which prevent the release of adrenalin.  ECF No. 6-2 at 50-52.  He now experiences panic attacks once or twice a month.  ECF No. 6-2 at 51.

---

[16] *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).
[17] *Id.* at 448.
[18] *Plaisance v. Astrue*, No. 08-5134, 2009 WL 4161086, at *2 (E.D. La. Nov. 23, 2009) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989)).

Vanacor also testified to his history of drug abuse. ECF No. 6-2 at 52. He was last hospitalized in September of 2020 after a relapse of his opiate addiction. ECF No. 6-2 at 52. Over the last several years, he has completed multiple residential rehabilitation programs for substance abuse and PTSD. ECF No. 6-2 at 53. While domiciled at a VA facility, Vanacor was sexually assaulted by a VA employee, which "retriggered some things from [his] childhood" and caused him to relapse upon return home. ECF No. 6-2 at 53. After the relapse, he received Vivitrol injections for several months and underwent substance abuse and PTSD therapy. ECF No. 6-2 at 54. He also takes multiple medications for his PTSD and associated mental conditions, including Celexa and Prazosin for nightmares, though he still has nightmares multiple times a week. ECF No. 6-2 at 54-55

Vanacor also testified about his physical conditions, which include sleep apnea, recurrent MRSA infections, and neuropathy. ECF No. 6-2 at 55, 57. He first contracted MRSA in 2012 while working offshore and has since dealt with reoccurrences requiring hospitalization and IV antibiotics. ECF No. 6-2 at 55-56. Environmental conditions that limit Vanacor's ability to maintain hygiene, such as dirty work conditions and sweating, can cause infections, and he has built up resistance to some of the antibiotics that treat MRSA. ECF No. 6-2 at 56. Plaintiff also experiences neuropathy in his wrist and hands, which causes his hands to go numb "all the time." ECF No. 6-2 at 57.

ALJ Wiedemann questioned Vanacor about his periods of sobriety, and Plaintiff testified that he was sober during his stays at substance abuse and PTSD programs and in 2019 and 2020 and has been sober since September 2020 when he entered a substance abuse program upon relapse. ECF No. 6-2 at 59-60. When asked about the difference in his mental health when he is using substances versus sober, Vanacor testified that his substance use reduced his anxiety and the

severity of his mental symptoms, but now that he is clean, he still experiences severe symptoms but knows how to cope with them.  ECF No. 6-2 at 60.  Plaintiff also stated that he is a "100% total and permanently disabled veteran" and "the VA pays [him] a certain amount of money" for the rest of his life.  ECF No. 6-2 at 63.

### C.  **Vocational Expert Testimony**

Vocational expert Mary Downing testified at the hearing.  Downing classified Plaintiff's work as a deckhand as DOT reference 911.687-022, SVP 4, heavy duty; his car salesman work as DOT code 273.353-010, SVP 6, light duty; his stock clerk work as DOT reference 299.367-014, SVP 4, medium duty; his casting repairer work as DOT code 619.281-010, SVP 6, medium duty, and his automobile mechanic work as DOT reference 620.261-010, SVP 7, medium duty. ECF No. 6-2 at 69. ALJ Wiedemann eliminated Plaintiff's mechanic work from the RFC analysis because his four-weeks in that capacity would not meet the SVP. ECF No. 6-2 at 71.

In exploring available work in the national economy, the ALJ posed a hypothetical based on an individual of the same age, education, and work experience as Plaintiff who can occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and walk for six hours in an eight-hour workday, handle on a frequent basis with his bilateral upper extremities, sustain attention for up to two-hour blocks of time when performing simple and routine work-related tasks, follow simple work like procedures, and make simple work-related decisions.  The individual would not require an inordinate amount of supervision when performing simple and routine tasks, and his symptoms would not prevent sustaining mental demands associated with the performance of simple, routine tasks throughout an ordinary workday or workweek, but he would have significant difficulty dealing effectively with the demands of the general public and could work in proximity to the public but not engage in direct public contact.  He could engage in occasional co-

worker and supervisor interaction, independently maintain appropriate hygiene and dress, would function best in a standardized work environment with minimal variation, and could make adjustments and avoid hazards in a work environment with minimal variation. ECF No. 6-2 at 71-72. Downing responded that such an individual could not return to any of Vanacor's past work, but could work in positions including raw shellfish preparer, DOT reference 311.674-014, SVP 2, light duty (222,086 in the national economy); cleaner DOT reference 323.687-014, SVP 2, light duty (222,086 in the national economy); and marker, DOT reference 209.587-034, SVP 2, light duty (129,337 in the national economy).

Altering the hypothetical, the ALJ asked Downing to consider the same individual who would have the additional limitation of becoming overwhelmed on the job on an occasional basis, which would cause him to retreat from the work up to 20% of the time. ECF No. 6-2 at 73. The vocational expert testified that, based on her training and expertise, this additional limitation would leave no competitive work in the national economy. ECF No. 6-2 at 73.

Plaintiff's counsel then examined the expert and asked her to consider the same individual in hypothetical one with the additional limitation of job absences two to three times per week at unpredictable intervals, 20 to 30 minutes at a time. ECF No. 6-2 at 73. Downing testified that such conditions would not be tolerated at any of the identified jobs based on her training and experience. ECF No. 6-2 at 73-74.

**D. <u>Medical Evidence</u>**

I have reviewed the medical records and the ALJ's summary of the medical evidence. ECF Nos. 6-8. The ALJ's summary of the medical evidence is substantially correct and is incorporated herein by reference.

### E.  **Plaintiff's Appeal**

At step 1, the ALJ determined that Vanacor had not engaged in substantial gainful activity since January 25, 2019.[19]   At step 2, the ALJ found severe impairments of sleep apnea, degenerative disc disease of the cervical spine, Major Depressive Disorder, Posttraumatic Stress Disorder (PTSD), Generalized Anxiety Disorder, and polysubstance abuse (20 C.F.R. 404.1520(c)) that significantly limit the ability to perform basic work activities.[20]

The severity of "mental disorders" is measured using medical criteria ("paragraph A"), functional criteria ("paragraph B"), and an analysis of "serious and persistent mental disorders" ("paragraph C").[21]   Listing 12.04 (Depressive, bipolar and related disorders) and Listing 12.15 (Trauma- and stressor-related disorders) each require that Plaintiff's impairment satisfy the criteria of paragraphs A **and** either B or C.  Paragraphs A of the two Listings differ, but paragraphs B and C are the same.  Section 12.04(A) (depressive disorder) requires, in pertinent part:

> A.  Medical documentation of the requirements of paragraph 1 or 2:
>    1.  Depressive disorder, characterized by five or more of the following:
>        a.  Depressed mood;
>        b.  Diminished interest in almost all activities;
>        c.  Appetite disturbance with change in weight;
>        d.  Sleep disturbance;
>        e.  Observable psychomotor agitation or retardation;
>        f.  Decreased energy;
>        g.  Feelings of guilt or worthlessness;
>        h.  Difficulty concentrating or thinking; or
>        i.  Thoughts of death or suicide.
>    2.  Bipolar disorder . . . .

Listing 12.15(A) (trauma- and stressor-related disorders) requires:

> A. Medical documentation of all of the following:
>    1. Exposure to actual or threatened death, serious injury, or violence;
>    2. Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);

---

[19] ECF No. 6-2 at 14.

[20] *Id.* at 15.

[21] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(a)–(c).

      3. Avoidance of external reminders of the event;
      4. Disturbance in mood and behavior; and
      5. Increases in arousal and reactivity (for example, exaggerated startle response, sleep
         disturbance).

Both Listing 12.04 and 12.15 require that the claimant satisfy paragraph A and either paragraph

B or C.  Paragraphs B and C in each Listing provide:

    B. Extreme limitation of one, or marked limitation of two, of the following areas of
    mental functioning:
      1. Understand, remember, or apply information.
      2. Interact with others.
      3. Concentrate, persist, or maintain pace.
      4. Adapt or manage oneself.

    OR

    C. Your mental disorder in this listing category is "serious and persistent;" that is, you
    have a medically documented history of the existence of the disorder over a period of at
    least 2 years, and there is evidence of both:
      1. Medical treatment, mental health therapy, psychosocial support(s), or a highly
        structured setting(s) that is ongoing and that diminishes the symptoms and signs
        of your mental disorder; and
      2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in
        your environment or to demands that are not already part of your daily life.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04, 12.15 (internal citations omitted).

      Based on the medical and non-medical evidence, the individual's limitation in each area is

rated on a five-point scale: (1) none; (2) mild; (3) moderate; (4) marked; and (5) extreme.  20

C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F(2), (3)(a) ("Clinicians may use these terms to characterize

your medical condition.  However, these terms will not always be the same as the degree of your

limitation in a paragraph B area of mental functioning.").  Moderate limitation means that the

individual's functioning in the area is fair.  *Id.* 12.00F(2)(c).  For marked, the individual must be

seriously limited, and, for extreme, the individual must be unable to function in the area at all. *Id.*

12.00F(2)(d) –(e).

> Limitation of an area of mental functioning reflects the overall degree to which [the individual's] mental disorder interferes with that area. The degree of limitation is how [the SSA] document[s] [its] assessment of [the individual's] limitation when using the area of mental functioning independently, appropriately, effectively, and on a sustained basis. It does not necessarily reflect a specific type or number of activities, including activities of daily living, that [the individual has] difficulty doing. In addition, no single piece of information . . . can establish the degree of limitation of an area of mental functioning.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F(3)(d).

To show medical equivalence, Plaintiff's condition must be "at least equal in severity and duration to the criteria of [the Listing]." 20 C.F.R. § 404.1526(a).  When the individual does not exhibit one or more of the required findings or one or more of the findings does not meet the required severity, the individual's impairment is medically equivalent to the Listing only if other findings related to that impairment are "at least of equal medical significance to the required criteria."  20 C.F.R. § 404.1526(b)(1)(ii).  At the hearing decision level, the ALJ is responsible for deciding whether an impairment is medically equivalent to a Listing.  20 C.F.R. § 404.1526(e)(3).

At step 3, the ALJ found that, even with the claimant's substance use, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  Before proceeding to step 4, based on all of the impairments, *including Plaintiff's substance use*, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with certain specified limitations.[22]  At step 4, ALJ Wiedemann determined that Plaintiff is unable to perform past relevant work as a deckhand (DOT 911.687-022), car salesman (DOT 273.353-010), stock clerk (DOT 299.367-014), or casting repairer (619.281-010) as that work requires performance of work precluded by his

---

[22] *Id.* at 17.

RFC.[23]  At step 5, considering Plaintiff's age, education, work experience, and residual functional capacity based on all the impairments, including the substance use disorder, the ALJ determined that there were no jobs that Plaintiff could have performed.[24]

The ALJ applied the sequential analysis a second time to address Plaintiff's abilities if he stopped abusing substances.  ALJ Wiedemann determined that, if Plaintiff stopped the substance abuse, his remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would have a severe impairment or combination of impairments (20 CFR 404.1522), but such impairment(s) would not meet or medically equal the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).[25]

The ALJ then determined that, if Vanacor stopped the substance use, he would have the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with certain specified limitations, but would still be unable to perform past relevant work.[26]  However, if Plaintiff stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.[27]  Ultimately, ALJ Wiedemann concluded that Plaintiff's substance use disorder is a contributing factor material to the determination of disability because he would not be disabled if he stopped the substance use.[28]  Hence, because the substance use disorder is a contributing factor material to the determination of

---

[23] *Id.* at 21.
[24] *Id.* at 22.
[25] *Id.* at 22-23.
[26] *Id.* at 24-26 (citing 20 CFR 404.1565).
[27] *Id.* at 26 (citing 20 CFR 404.1560(c) and 404.1566).
[28] *Id.* at 27 (citing 20 CFR 404.1520(g) and 404.1535).

disability, the ALJ determined that Plaintiff is not disabled within the meaning of the Act at any time from the alleged onset date through the date of her decision.[29]

Plaintiff first objects to the ALJ's decision to apply the Drug Addiction and Alcoholism ("DAA") materiality analysis, arguing the application was inappropriate considering Plaintiff was primarily in remission throughout the relevant period.[30]  He next asserts that his impairments of PTSD and depression are unrelated to and not exacerbated by his addiction, thus his drug addiction is not material to his disability and the ALJ finding of materiality constitutes legal error.[31]  Finally, Vanacor argues that the ALJ's findings of limitations absent drugs and alcohol, particularly her RFC determinations of Plaintiff's non-exertional mental limitations, were not based on substantial evidence, requiring remand.[32]

### F.   Evaluation of Cases Involving Drug Addiction and Alcoholism (DAA)

Under the Social Security Act, a claimant "shall not be considered to be disabled . . . if alcoholism or drug addiction would. . . be a contributing factor material to the Commissioner's determination that the individual is disabled."[33]  Social Security Ruling 13-2P provides guidance on evaluation of cases involving DAA and instructs that the "key factor" in determining whether DAA is a contributing factor material to the determination of disability is whether the Administration would still find a claimant disabled if he stopped using drugs or alcohol.[34]

The ALJ must first conduct the sequential five-step analysis to evaluate disability without separating out the impact of DAA.[35]  If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with

---

[29] *Id*.
[30] ECF No. 10-3 at 8-10.
[31] *Id.* at 8, 10-11.
[32] *Id.* at 8, 12-13.
[33] 42 U.S.C. § 423(d)(2)(c).
[34] Social Security Ruling (SSR) 13-2p, 2013 WL 621536 at *4 (Feb. 20, 2013).
[35] *Id*.; *see also* 20 C.F.R. § 416.920(a)(4).

the materiality analysis.[36]  However, a finding of "disabled" under the five-step inquiry does not automatically qualify such a claimant for disability benefits; if the ALJ finds that the claimant is disabled considering all impairments including the DAA, and there is medical evidence of his or her drug addiction or alcoholism, the ALJ must make a DAA materiality determination.[37]  But if the claimant has a history of DAA that is not relevant to the period under consideration, the ALJ need not make a DAA materiality determination.[38]

If the claimant's history of DAA is relevant to the period under consideration, the ALJ performs the sequential analysis a second time and determines which of the Plaintiff's physical or mental limitations would remain if he stopped using drugs or alcohol.  Then, the ALJ must determine whether the remaining limitations would still be "disabling" under the meaning of the Act.[39]  If so, the claimant's DAA is not a material factor to the disability determination.[40]  The claimant bears the burden of proof regarding the relevance of any DAA to his disability determination.[41]

## 1. Plaintiff's DAA is Relevant to the Disability Determination Period

If a claimant has a history of DAA that is not relevant to the period under consideration, the ALJ need not make a DAA materiality determination.[42]  The relevant period under

---

[36] *Id*.; *see also Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) (holding that an ALJ's failure to determine whether a claimant was disabled by evaluating his impairments using the five-step sequential process without separating out the impact of his DAA precluded finding that the DAA was a contributing factor to his disability).

[37] SSR 13-2p at *4.  *See also Riley v. Kijakazi*, No. 21-00750, 2022 WL 4230247 (W.D. La. Aug. 29, 2022) ("Indeed, pursuant to the SSA's Program Operations Manual System ("POMS"), an adjudicator only will make a DAA materiality determination when, inter alia, he has determined that the claimant otherwise is disabled, considering all impairments, including DAA.") (citing POMS, DI 90070.050), *R&R adopted*, 2022 WL 4227881 (W.D. La. Sept. 13, 2022).

[38] *Id*.

[39] 20 C.F.R. § 404.1535(b)(2).

[40] 20 C.F.R. § 416.935(b)(2).

[41] SSR 13-2p  at *4; *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012).

[42] SSR 13-2p, 213 WL 621536, at *4. ("We do not make a determination regarding materiality if a claimant has a history of DAA that is not relevant to the period under consideration.").

consideration commenced at the alleged disability onset date (January 25, 2019) and ended on the date of the ALJ decision (January 2022).[43]

Plaintiff argues that he was "overwhelmingly abstinent from drug and alcohol use" during this time period, thus the DAA materiality determination should not have been made.[44] Specifically, he asserted that he was sober for 19 months before his September 2020 hospitalization at Longleaf, except for a three-month period of relapse that led to his admission for treatment, and he has remained substance free since September 17, 2020. Therefore, he argues, his history of DAA is not material to his current impairments and the ALJ erred in performing a DAA analysis of his claim.[45]

In response, the Commissioner notes that, in addition to the treatment records reflecting a three-month relapse with alcohol and heroin use before Plaintiff's September 2020 hospitalization, there is also evidence that Plaintiff abused drugs or alcohol during the relevant period, including two weeks of opiate/heroin usage in July 2019 and another relapse in December of 2020.[46]

The record evidence reflects that, after the alleged disability onset date of January 25, 2019, Vanacor continued to use drugs or alcohol at multiple points. In June of 2019, Plaintiff was "actively smoking heroin."[47] He reported heroin use in July 2019,[48] marijuana and alcohol use in September 2019,[49] with his sobriety "going downhill since December 2019, use of illicit pain pills started, increased use by March 2020, [and] by August 2020 using IV heroin."[50] In early September 2020, Plaintiff underwent treatment at Longleaf Hospital, where he reported he was

---

[43] ECF Nos. 10-3 at 9-10, 11-1 at 7.
[44] ECF No. 10-3 at 9-10.
[45] *Id.* at 9.
[46] ECF No. 11-1 at 7.
[47] ECF No. 8-7 at 151.
[48] *Id.* at 84.
[49] *Id.* at 84-86.
[50] ECF No. 8-6 at 121.

clean and sober for 19 months (despite the documented drug use in June 2019 and later) but relapsed three months prior (i.e., June 2020).[51]  Plaintiff then accidentally overdosed on heroin on September 17, 2020, after which his mother found him unresponsive and he was admitted to the hospital.[52]  The ALJ also noted a relapse in December 2020.[53]

Plaintiff bears the burden of proof regarding the relevance of any DAA to his disability determination.[54]  Beyond SSR 13-2p, which provides that a DAA materiality determination is not made when a "claimant has a history of DAA that is not relevant to the period of consideration," Plaintiff cites no authority in support of his contention that his history of substance abuse, some of which occurred during the period under consideration, is not relevant to the disability determination.[55]

While Plaintiff appears to have maintained periods of abstinence during the relevant time period, the record reflects that he also experienced relapses and substance abuse at multiple points after the onset date, not only the drug use conceded in his papers.  Accordingly, Plaintiff's substance use is relevant to the period under consideration, namely the alleged onset date of January 25, 2019 through the date of the hearing decision.  For that reason, the ALJ did not err in applying the DAA materiality analysis based on the credible medical evidence that Plaintiff's substance use disorder manifested at multiple points during the period under consideration.[56]

---

[51] ECF No. 7-6 at 188.
[52] ECF No. 8-2 at 106, 115, 117.
[53] ECF Nos. 6-2 at 20, 8-2 at 33.
[54] SSR 13-2p at *4; *see also Cage,* 692 F.3d at 123.
[55] *See* ECF No. 10-3 at 9-10.
[56] *See Reynaldo Flores R. v. Kijakazi,* No. 20-085, 2022 WL 325747, at *1 (N.D. Tex. Feb. 3, 2022) ("If, in the first-pass analysis, the ALJ determines that the plaintiff is disabled and that there is 'medical evidence' of 'drug addiction or alcoholism," the ALJ must then proceed with a second-pass analysis to determine if the claimant would be found disabled if he or she stopped [using] drugs or alcohol.").

## 2. Materiality Determination

A claimant is not eligible for benefits if DAA is a contributing factor material to a determination of disability.[57]  Thus, if "there were jobs that Plaintiff could have performed during the relevant time period if he had not abused [drugs or] alcohol, his [DAA] would be material to the disability determination, and he would not have been eligible for benefits."[58]

When a claimant has co-occurring mental disorders, such as Plaintiff's multiple disorders here, the Administration has stated that it knows of no research data usable to "predict reliably that any given claimant's co-occurring mental disorder would improve or the extent to which it would improve, if the claimant were to stop using drugs or alcohol.[59]  To support a finding that DAA is material, the ALJ must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder would not be disabled in the absence of DAA.[60]  Unlike cases involving physical impairments, the Administration does not permit ALJs to rely exclusively on medical expertise and the nature of a claimant's mental disorder to support a finding of materiality and empowers ALJs to obtain a consultative examination to assist in the determination.[61]  If "the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA," the claim will be allowed.[62]

Pursuant to SSR 13–2p, periods of abstinence may be considered evidence of whether DAA is material in cases involving co-occurring mental disorders, so long as the "claimant is abstinent long enough to allow the acute effects of drugs or alcohol abuse to abate."[63]  When an

---

[57] 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535(b)(2)(i).
[58] *Halterman ex rel. Halterman v. Colvin*, 544 F. App'x. 358, 360 n.4 (5th Cir. 2013).
[59] SSR 13-2p, at *9.
[60] *Id.* at *9.
[61] *Id.*
[62] *Id.*
[63] *See  id.* at *12; *see also Young v. Comm'r of Soc. Sec. Admin*, 214 F. Supp. 3d 987, 994-95 (D. Or. 2016).

ALJ is considering a period of abstinence with co-occurring mental disorders, the documentation should include information about what impairment-related limitations remained after the acute effects abated, the length of the abstinence, and under what circumstances the abstinence occurred, such as hospitalization or treatment setting.[64]  In addition, a record of multiple hospitalizations, emergency department visits, or other treatment for the co-occurring mental disorder—with or without treatment for DAA—is an indication that DAA may not be material even if the claimant is discharged in improved condition after each intervention.[65]  If the evidence in the case record does not demonstrate the separate effects of the treatment for DAA and for the co-occurring mental disorder(s), the SSA will find that DAA is not material.[66]  Accordingly, an ALJ must be particularly careful when evaluating evidence demonstrating that a claimant's co-occurring mental disorder(s) improved with mental health and/or substance abuse treatment in "a highly structured treatment setting," such as a hospital or residential rehabilitation center.[67]

The Administration also recognizes that, "the symptoms and signs of a co-occurring mental disorder or even symptoms of some physical impairments will not necessarily abate with abstinence.  Sometimes, withdrawal of the substance(s) may result in a worsening of the symptoms and signs attributable to the other impairment(s); for example, increased anxiety or pain."[68]

The claimant bears the burden of proving that his DAA is not a contributing factor material to his disability.[69]  Nonetheless, the ALJ retains the responsibility to develop a full and fair record

---

[64] *Id*.
[65] SSR 13-2p, at *13.
[66] SSR 13-2p at *12 (emphasis added).
[67] *Nelson v. Saul*, 413 F. Supp. 3d 886, 911 (E.D. Mo. 2019) (citing SSR 13-2p, *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002)).
[68] SSR 13-2p at *13 n.30.
[69] *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) ("We thus hold, for the first time, that [Plaintiff] bears the burden of proving that drug or alcohol addiction is not a contributing factor material to her disability."); *see also Ellis v. Saul*, No. 20-329, 2021 WL 4484561 (M.D. La. Sep. 7, 2021), *R&R adopted*, No. 20-329, 2021 WL 4483062 (M.D. La. Sep. 29, 2021).

in the non-adversarial proceeding.[70] When there are co-occurring mental disorders in addition to a claimant's DAA, as here, SSR 13-2p makes clear that the ALJ must be able to separate the effects of the two types of impairments in order to find DAA material.  "[T]he ALJ must take on the difficult task of untangling the warp threads of the claimant's substance abuse from the woof threads of the claimant's other impairments in order to examine the hypothetical cloth that remains."[71]

For example, in *Cripps v. Saul*,[72] the court reversed and remanded the Commissioner's finding of non-disability where the ALJ determined that a claimant alleging post-traumatic stress disorder, depression, anxiety and trouble sleeping was not disabled due to the materiality of his DAA without substantial evidence for that conclusion.  The *Cripps* ALJ determined, just as ALJ Wiedemann did here, that the claimant suffered from severe mental impairments due to, *inter alia*, PTSD and DAA, but even with the substance abuse, none of the impairments met or medically equaled a listing.  Considering all limitations, including the DAA, the ALJ crafted an RFC that included the claimant being off task up to twenty percent of the time, which RFC a vocational expert testified would preclude the claimant from performing any jobs in the national economy, rendering the claimant disabled.[73]  The ALJ further found, however, that if the claimant ceased his substance abuse, his remaining mental impairments resulted in an RFC that would restrict him to simple, routine tasks, but would not result in him being off task twenty percent of the workday.

---

[70] *Thorton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. 1981); *Glynn v. Comm'r of Soc. Sec. Admin.*, No. 16-18, 2017 WL 1246351, at *3 (M.D. La. Mar. 17, 2017); *see also Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).
[71] *Nelson* 413 F. Supp. 3d at 913 (quoting *Malone v. Colvin*, 2014 WL 438590, at *3 (W.D. Ark. Jan. 31, 2014); *see also* SSR 13-2p).
[72] No. 19-1501, 2020 WL 3979781 (W.D. La. June 29, 2020), *R&R adopted*, 2020 WL 3979670 (W.D. La. July 14, 2020).
[73] *Id.* at *2.

Assessing this second RFC, the vocational expert identified multiple jobs in the national economy that the claimant could perform.[74] As such, a finding of not disabled necessarily followed.

On review, the court determined that the ALJ, in deriving the two RFCs, made certain interpretations and/or findings not supported by the record.[75] The court noted that medical opinions cited failed to distinguish between the claimant's limitations during periods of substance use and abstinence and concluded that none of the opinions of the mental health professionals provided support for the ALJ's RFC, absent DAA.[76] Because the foundation for the ALJ's step five determination, absent DAA, was premised upon an RFC that was not supported by substantial evidence, the court further found that the ALJ's finding of materiality of substance abuse disorder and concomitant conclusion that the claimant was not disabled was likewise not supported by substantial evidence.[77] Accordingly, the court reversed the decision and remanded claimant's case for further development of the record.[78]

### 3. The ALJ's Materiality and Second RFC Determinations

Plaintiff asserts that the ALJ committed legal error in finding that his substance use disorder is a contributing factor material to the disability determination because his PTSD and depression are "unrelated to and not exacerbated by his addiction"[79] and that the ALJ's determination of the Plaintiff's RFC in the absence of drugs and alcohol was not based on substantial evidence, requiring remand.[80] Plaintiff specifically takes issue with the ALJ's determination that the Plaintiff could work in proximity, but not directly with, the general public and could have occasional coworker and supervisor contact and the determination that Plaintiff

---

[74] *Id.*
[75] *Id.* at *8.
[76] *Id.* at *8-9.
[77] *Id.* at 10.
[78] *Id.*
[79] ECF No. 10-3 at 10.
[80] *Id.* at 12-13.

could sustain attention for two hour blocks at a time, perform routine tasks, and make simple work-related decisions.

The ALJ's decision reflects that she followed the Regulations and procedure to the extent she first considered whether Plaintiff was disabled in view of all of his limitations, including his substance use, before considering whether his limitations would remain if his substance use ceased.[81] Performing the first sequential analysis, the ALJ determined that Plaintiff's limitations would cause more than a significant impact on his ability to perform basic work activities and, therefore, he would have a severe impairment or combination of impairments, but none that alone or in combination would meet or medical equal a listing.[82] In determining that Plaintiff's mental impairments do not meet a listing, the ALJ considered the paragraph B criteria and concluded that Plaintiff had only moderate limitations in his abilities to understand, remember, or apply information, understand and remember detailed instructions, interact with others, concentrate, persist and maintain pace, and adapt and manage himself.[83] The ALJ considered these limitations in crafting the RFC, noting that, "[with] substance use, it is obvious that the claimant would be off task, unreliable, and, therefore, unable to sustain work."[84] This resulted in an RFC determination indicating that Plaintiff would be off task 20% of the time, disqualifying him from performance of any job that existed in significant numbers in the national economy.[85]

The ALJ then performed the required second sequential analysis, this time separating out Plaintiff's substance use from his other impairments to determine whether he would still be disabled if he "stopped substance use."[86] Just as the ALJ found the first time, she determined in

---

[81] ECF No. 6-2 at 22. *See* SSR 13-2p at *4-*5.
[82] ECF No. 6-2 at 22-24.
[83] *Id*. at 16-17.
[84] *Id*. at 20.
[85] ECF No. 6-2 at 17-22.
[86] *Id.* at 22-27.

the second analysis that Plaintiff's limitations would cause more than a significant impact on his ability to perform basic work activities and, therefore, he would have a severe impairment or combination of impairments, but none that alone or in combination would meet or medical equal a listing.[87]  She made the same conclusions about Plaintiff's mental limitations, finding that he was moderately limited in each aforementioned category.[88]  Bearing these limitations in mind, the ALJ crafted Plaintiff's RFC if he stopped substance abuse. The only difference between the two RFCs is that Plaintiff would be off task 20% of the time when substance use was considered and his "symptoms would not prevent sustaining the mental demands associated with performance of simple, routine tasks throughout a workday and workweek" if he stopped the substance use.[89]

In support of her RFC determination in the second analysis, the ALJ cited to the following evidence:

1.  Exhibit D7F, Plaintiff's inpatient record from his September 2020 stay at Longleaf Hospital.

2.  Exhibit D10F, Medical CE report by Dr. Moise on December 11, 2020.

3.  Exhibit D11F, Psychological CE assessment by Dr. Fontenelle on January 5, 2021.

4.  Exhibits D1A and D3A, Disability Determinations at the Initial and Reconsideration levels.

5.  Exhibits D26F and D27F, approximately 1600 pages of Plaintiff's electronic medical record from the VA from January 25, 2019 through December 1, 2021.

a.  **Longleaf Inpatient Records**

The records from Plaintiff's September 2-11, 2020 stay at Longleaf Hospital represent the type of evidence from a "highly structured treatment setting" that the Administration cautions ALJs to evaluate with particular care, because any improvement in the claimant's co-occurring

---

[87] *Id*. at 22-24.
[88] *Id*. at 23-24.
[89] *Compare* ECF No. 6-2 at 17 *with* ECF No. 6-2 at 24-25.

mental disorder may be due in large part to the restrictive setting.[90]  Further, this hospitalization directly proceeded Plaintiff's September 17, 2020 relapse.  The ALJ failed to separate out the effects of this inpatient treatment on his DAA versus his co-occurring mental disorder as required by SSR 13-2p.[91]  These records thus cannot serve as substantial evidence that Plaintiff's mental impairments would improve to the point of employability in the absence of substance use.

### b.  Consultative Examinations

Internal medicine physician Dr. Moise's medical CE report, issued on December 11, 2020, likewise offers no distinction between Plaintiff's DAA and his other mental limitations.[92]  The ALJ cited and assigned "persuasive" weight to Dr. Moise's assessment of Plaintiff's mental limitations.[93]  In her report, Dr. Moise acknowledged Plaintiff's history of mental health disease and "25-30 inpatient treatments," with the last occurring only two months before treatment at Longleaf Hospital.  Dr. Moise noted that Plaintiff appeared "on edge" and exhibited "visible nervousness."  Dr. Moise reported that Plaintiff "exhibits normal understanding, cooperation, concentration and attention," but his memory is "poor, with 0/3 object recall and 1/3 object recall after two minutes."  Dr. Moise ultimately diagnosed the following:

1.  PTSD, depression, anxiety, insomnia and nightmares; on medication and multiple therapies, still with frequent panic attacks (twice weekly) and is scared to leave home.
2.  History of opioid use, on injection monthly, in remission.
3.  C4-C8 herniated discs, status post motor vehicle accident, with bilateral radiculopathy.
4.  Obstructive sleep apnea, compliant with C-PAP.
5.  Tinnitus, secondary to traumatic brain injury and explosives, constant.

---

[90] SSR 13-2p, at *12; *Nelson*, 413 F. Supp. 3d at 911 (citing SSR 13-2p, *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002)).

[91] *See Jessie L. v. Kijakazi*, No. 20-9305, 2022 WL 2222964 (N.D. Cal. June 21, 2022) (remanding case where ALJ relied on records from highly structured treating settings in determining materiality of DAA and failed to separate the effects of the structured environment and the purported sobriety) (citing cases); *Nelson*, 413 F. Supp. 3d at 919 (determining that treatment notes were not substantial evidence that plaintiff's mental impairments would not be disabling in the absence of DAA because they took place shortly after intensive, highly structured inpatient treatment).

[92] ECF No. 7-8 at 14-20.

[93] ECF No. 6-2 at 25 ("The objective evidence. . . supports the light residual functional capacity and mental limitations assessed herein.") (Citing D10F, Dr. Moise's assessment).

Dr. Moise did not address, and nothing in her evaluation, substantiates the ALJ's conclusion that the Plaintiff would be off task 20% of the time when substance use is considered, but not when substance use is set aside. Rather the opposite: Dr. Moise's assessment indicates memory issues that could affect Plaintiff's ability to stay on task in a work setting.

Likewise, Dr. Fontenelle's psychological CE report, which the ALJ found persuasive, fails to distinguish between the effects of Plaintiff's DAA and his co-occurring mental conditions.[94] In his January 6, 2021 report, Dr. Fontenelle noted that Plaintiff was ambulatory and properly groomed, exhibited reality based thinking, and described waking up having depressed mood and panic attacks on some days. Dr. Fontenelle assessed Plaintiff's mood and affect as follows:

> Pensive and cautious. Affect is anxious. He does report persistent worry and excessive anxiety over minor life events. He describes to me having difficulty having minor stress, feeling overwhelmed, and prone to feeling despair. He has thought that suicide maybe an option with life stress. He does admit 2 prior admits for suicidal thinking with no active suicide plan at present.[95]

Dr. Fontenelle also noted that Plaintiff has undergone "extensive inpatient and outpatient treatment along with other medication" and that Plaintiff reported 100% mental health disability from the US Army. In the functional capabilities section of his report, Dr. Fontenelle referenced Plaintiff's statement that he experiences 2 or 3 panic attacks weekly. In his medical source opinion, Dr. Fontenelle referenced Plaintiff's statement that "he is unable to hold a job over a long term basis due to panic attacks and conflicts with coworkers."[96] Dr. Fontenelle indicated that Plaintiff's pace and concentration "seem fair with medication management" and diagnosed a "guarded" prognosis.[97]

---

[94] ECF No. 7-8 at 21-26.
[95] ECF No. 7-8 at 24.
[96] ECF No. 7-8 at 25.
[97] *Id*. at 25.

Beyond these two statements, Dr. Fontenelle did not offer any conclusions about Plaintiff's mental limitations or their effect on his ability to stay on task or maintain a stable mood in a workplace setting, whether while using substances or otherwise.  Dr. Fontenelle also issued the following diagnostic impressions: post-traumatic stress disorder; major depression disorder, recurrent, moderate; generalized anxiety with panic attacks; opioid dependent, by history (in remission with treatment); heroin dependence,  by history (in remission with treatment); and somatic symptom disorder with persistent physical symptoms.[98]

Dr. Fontenelle's opinion and findings do not address the effect of Plaintiff's impairments on his ability to understand, remember, or apply information; his ability to understand and remember detailed instructions; his ability to interact with others; or his ability to adapt or manage oneself, either when Plaintiff is using substances or when he is not.  Further, his evaluation fails to distinguish generally between plaintiff's psychological impairments when he is using substances versus substance-free.  While Dr. Fontenelle diagnosed Plaintiff's substance use disorder as "in remission," he does not separate out the effects of the various inpatient and ongoing treatments Plaintiff has undergone on his substance use disorder versus his other mental limitations.

Further, to the extent that the ALJ relied on this evaluation as evidence of Plaintiff's mental limitations in a "period of abstinence," it is important to note that Dr. Fontenelle's assessment  was performed less than four months after Plaintiff's September 2020 heroin overdose and less than one month after his December 2020 relapse of oral opiates.  The Administration makes clear that it is "unable to provide exact guidance on the length and number of periods of abstinence to demonstrate whether DAA is material in every case. In some cases, the acute and toxic effects of substance use or abuse may subside in a matter of weeks, while in others it may take months or

---

[98] *Id*.

27

even longer to subside." As this assessment was performed at a time when the effects of Plaintiff's DAA may or may not have abated, and Dr. Fontenelle did not distinguish between Plaintiff's mental limitations while on and off substances, his opinion cannot not serve as a basis for the ALJ's second RFC determination nor her conclusion that Plaintiff would be off task 20% of the time while using substances but not if he ceased his substance use.

### c. State Disability Determination Medical Examiners

In crafting the second RFC, the ALJ also cited the opinions of non-examining medical examiner at the initial level, Hollis Rogers, M.D. She noted that "Hollis Rogers opined that the claimant could perform less than the full range of light exertional work with additional manipulative limitations," which opinion Johnny Craig, M.D. affirmed on Reconsideration.[99] Neither Rogers nor Craig opined about the effect of DAA on Plaintiff's mental limitations.

### d. State Disability Determination Psychological Examiners

The ALJ was also persuaded by the opinions of State agency reviewing psychologist at the initial level, Catherine Wise, Ph.D., who did not examine Plaintiff but reviewed the medical evidence of record as of January 11, 2021.[100] Notably, Plaintiff's VA records from 2019-2021 were not included in Dr. Wise's assessment as they were not yet available, despite multiple requests to the VA[101]. Instead, Dr. Wise relied on VA records from 2016 and 2017, over two years before the alleged onset date, records from Plaintiff's inpatient stay at Longleaf Hospital from

---

[99] *See* ECF No. 6-3 at 2-10, 12-21.
[100] *Id.* at 2-10.
[101] *Id*. at 5.

September 9, 2020 to September 11, 2020, Dr. Moise's medical CE, and Dr. Fontenelle's psychological CE.

Based on these records and her overall review, Dr. Wise concluded Plaintiff had severe substance addiction, trauma, and depressive disorders with moderate limitations in understanding, interacting with others, concentration, and adaptation or management of oneself.[102]  Dr. Wise specifically opined that Plaintiff can understand, retain, and follow simple instructions of at least two steps; sustain attention for up to 2-hour blocks when performing simple and routine work-related tasks, follow simple work-like procedures, and make simple work-like decisions.  She concluded that Plaintiff would not require inordinate supervision when performing simple and routine tasks nor would his symptoms prevent sustaining mental demands associated with performance of simple, routine tasks throughout an ordinary workday/workweek.  She also noted that Plaintiff would have significant difficulty dealing effectively with the demands of the general public, but could relate to the public on a limited basis, and coworkers and supervisors in non-confrontational situations.

Notably, Dr. Wise did not opine that Plaintiff would be off task 20% of the time, whether while using substances or otherwise.  In fact, Dr. Wise did not address the materiality of Plaintiff's substance use whatsoever.  While Dr. Wise noted Plaintiff's history of substance use disorder and associated inpatient treatments, she ultimately concluded that, while substance abuse was documented, a DAA materiality determination was not required.[103]  Therefore, Dr. Wise did not delineate between Plaintiff's impairments during periods of substance use and those during periods of abstinence.

---

[102] *Id.* at 3-6.
[103] ECF No. 6-3 at 10.

At the reconsideration level, Lisette P. Constantin, PhD affirmed Dr. Wise's assessment. At that point, the records were still devoid of Plaintiff's VA medical electronic record for the years in question, namely 2019-2021.[104]  Dr. Constantin, like Dr. Wise, noted that, while substance use is documented, a DAA materiality determination is not required. Therefore, neither Dr. Wise nor Dr. Constantin distinguished between the Plaintiff's DAA and his other mental impairments. Accordingly, neither medical opinion supported the ALJ's second RFC determination nor her conclusion that Plaintiff would be off task 20% of the time only when accounting for substance use.

### e.  VA 2019-2021 Medical Records

The final sources of evidence cited by the ALJ in support of her second RFC determination were exhibits D26F and D27F, which total roughly 1600 pages of Plaintiff's medical records from the Department of Veterans Affairs.[105]  D26F contains records for the 3/22/19 through 9/27/21 period, while D27F includes records from 1/25/19 through 12/1/21.  Notably, the ALJ for the most part cites to these records *in toto* without providing page citations in support of her conclusions. The ALJ indicated that "[s]ince relapses in September and December 2020, the claimant appears to be clean," and concluded that his mental status without substance is as follows:

> With medication compliance and sobriety, he reported improved mood, adequate sleep, and good appetite. He denied suicidal ideations, and his psychologist noted that he exhibited good judgment and insight, linear, logical and goal-oriented thought content without evidence of psychosis. The claimant is attending frequent telephone group meetings and speaking with his psychiatrist. Treatment notes generally indicated that he was able to engage in therapy sessions, interact with others, follow directions, understand basic rules of therapy group activities, and displayed working knowledge of those activity [sic]. Although he credibly admitted improvement with PTSD treatment and medication for panic attacks, the records are not consistent with the extreme anxiety and paranoia as the claimant testified.[106]

---

[104] *Id*. at 15.
[105] ECF Nos. 8-1—8-3 (D26F); 8-4—8-9 (D27F).
[106] ECF No. 6-2 at 25.

The ALJ also noted that Plaintiff's "[m]ental status examinations are relatively benign absent drugs," and treatment notes "showed that the claimant presented alert and fully oriented to time, person, place, and situation."[107]

Notes from Plaintiff's participation in structured, hour-long, remotely-conducted PTSD and substance abuse group therapy sessions cannot alone establish the materiality of Plaintiff's substance use, particularly where the evidence cited does not demonstrate the separate effects of these sessions on Plaintiff's DAA and co-occurring mental disorders.[108]  Additionally, the ALJ's conclusion that Plaintiff's mental status examinations were "relatively benign absent drugs" and her citation to treatment record notes indicating that Plaintiff appeared "alert" and "fully oriented" fail to demonstrate that Plaintiff was more capable of staying on task and remaining calm absent the substance abuse, especially in a case where nearly every clinician diagnosed Plaintiff with PTSD and depression.[109]

---

[107] *Id*. (citing Exhibits D7F, D10F-D11F, D26F-D27F).

[108] *See* SSR 13-2P at *12-*13 (noting that improvement in a co-occurring mental disorder in a highly structured treatment setting may be due "in part to treatment to for the co-occurring mental disorder, not (or not entirely) the cessation of substance abuse" and the Administration "may find that a claimant's co-occurring mental disorder is still disabling even if increased support or a highly structured setting reduce the overt symptoms and signs of the disorder); *see also McClaflin v. Colvin*, No. 14-1128, 2016 WL 5390908, at *12-13 (W.D. Ok. Sept. 27, 2016) (noting that SSR 13-2p prohibits reliance on evidence from  highly structured treatment settings or those offering increased support "unless a distinction is properly drawn between improvement due to abstinence from [DAA] and improvement due to treatment of co-occurring mental disorders" and remanding case where the evidence failed to demonstrate such separate effects).

[109] *See Jessie L.,* 2022 WL 2222964 at *17 (noting that observations that plaintiff appeared calm with good eye contact and organized thought processes fail to demonstrate that he possessed a more relaxed functional limitation absent substance abuse, "especially in a case where nearly every clinician diagnosed Plaintiff with severe PTSD and depression.") (citing *Norman v. Berryhill*, No. 17-04108, 2018 WL 4519952, at *9 (N.D. Cal. Sept. 19, 2018) (holding that ALJ's finding that plaintiff "present[ed] as 'pleasant and cooperative' [wa]s not inconsistent with allegations of depression, particularly where... every clinician who treated or examined her diagnosed plaintiff with depression, PTSD, and/or anxiety disorder) (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("the treatment records must be viewed in light of the overall diagnostic record"); *see also Regennitter v. Comm'r of Soc. Admin*., 166 F.3d 1294, 1299 (9th Cir. 1999) (finding examining expert's diagnoses of major depression, panic disorder, PTSD, and nightmare disorder were not inconsistent with what ALJ characterized as "benign Mental Status Exam" where expert did not call the exam benign and where exams noted claimant "to be tearful and sad, with a monotone and hypophonic voice and psychomotor retardation" and noted "blunted affect and uncontrolled crying").

In sum, the evidence relied upon by the ALJ does not adequately separate the effects of plaintiff's substance abuse from the effects of his co-occurring mental disorders of major depressive disorder and post-traumatic stress disorder, nor the separate effects of treatment on either.[110]  The records and medical evaluations relied on by the ALJ do not support her conclusion that it is substance abuse, and not any of Plaintiff's other mental conditions, that preclude him from substantial gainful employment or keep him off task 20% of the time.

The ALJ also  relied in part on opinion evidence.  As discussed above, none of the medical source opinions expressly or implicitly considered the difference between plaintiff's mental impairments when he was using substances versus sober.  Neither the State agency reviewing psychologists, nor the consultative medical examiner attempted to separate the impacts of Plaintiff's substance abuse from the impacts of his co-occurring severe mental impairments.  Thus, taking the medical opinions as a whole, none can be read as stating an opinion as to whether plaintiff would still be disabled in the absence of substance use.  This is problematic, particularly given  Plaintiff's admission that he functioned better while using substances.[111]

The ALJ made the critical finding that, if plaintiff were to cease his substance abuse, his remaining mental impairments and limitations would not be severe enough to preclude work activity.  In doing so, she ALJ made an improper medical conclusion based on her lay opinion that plaintiff's substance use, as opposed to his co-occurring mental impairments, "obvious[ly]" caused the Plaintiff to be "off task, unreliable, and therefore, unable to sustain work."[112]   The ALJ made this conclusion without a medical opinion from any expert addressing Plaintiff's differing mental

---

[110] *See Cripps*, 2020 WL 3979781, at *8-10.
[111] *See* ECF No. 6-2 at 60-61.
[112] ECF No. 6-2 at 20; *see also Nelson*, 413 F. Supp. 3d. at 913.

abilities while using substances versus substance-free.[113]  Accordingly, the ALJ erred in assessing the RFC during the DAA analysis without substantial evidence in the record for her materiality determination and conclusion that, if plaintiff stopped substance and alcohol use, he would be able to work.

## V.  **INSTRUCTIONS ON REMAND**

For the reasons stated above, the ALJ's decision was not supported by substantial evidence. The Court finds that the current record cannot support a disability determination either in favor of or against plaintiff. Thus, a remand to the Commissioner is warranted for further administrative proceedings to revisit the sequential DAA evaluation process from the RFC assessment forward, because the record needs to be further developed regarding whether DAA is material to plaintiff's disability. On remand, the ALJ's DAA analysis and review of the evidence, which may include supplemental medical examinations and consultation with psychological experts, is governed by Social Security Ruling 13-2p, which sets forth how a DAA analysis should be conducted in cases involving co-occurring mental disorders, and the Regulations otherwise applicable under the five-step sequential disability evaluation.[114] In addition, plaintiff should be afforded a reasonable opportunity to supplement the medical evidence to address the issues identified herein. Plaintiff should remain cognizant that the ultimate burden of proving continued disability rests with him.

## VI.  **CONCLUSION**

The decision of the Commissioner is reversed and remanded for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4. Upon remand, the ALJ is directed to develop the record

---

[113] *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (An ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions") (citing *Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir. 1995)).

[114] *See McClaflin*, 2016 WL 5390908, at *13 (directing ALJ to distinguish between the effects of plaintiff's treatment for DAA and treatment for his depression and panic disorder via "further medical examination and careful review of the medical evidence consistent with SSR 13-2P").

in a manner consistent with the Court's opinion. The Court does not disturb the ALJ's determination that, in accordance with the five-step sequential evaluation process, plaintiff is disabled when all impairments, including substance and alcohol use, are considered.

Accordingly,

IT IS RECOMMENDED that the Plaintiff's Motion for Summary Judgment (ECF No. 10) be GRANTED IN PART AND DENIED IN PART and that Defendant's Cross-Motion for Summary Judgment (ECF No. 11) be DENIED.

IT IS FURTHER RECOMMENDED that a Judgment of Reversal and Remand be entered, remanding this case to the Commission of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

New Orleans, Louisiana, this 9th day of March, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE